**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

**KORTNEY OVIEDO,**
Plaintiff,

v.

**BENJAMIN E. TRAINER,**
**LEATHERNECK BACKCOUNTRY FISHING LLC,**
**VETERANS R&R FISHING INCORPORATED,**

Defendants.

Case No. ___________________

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Kortney Oviedo ("Plaintiff"), by and through undersigned counsel, brings this Complaint against Defendants Benjamin E. Trainer ("Trainer"), Leatherneck Backcountry Fishing LLC ("Leatherneck"), and Veterans R&R Fishing Incorporated ("Veterans R&R") (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from a retaliatory course of conduct that culminated in false statements concerning Plaintiff's professional conduct being communicated directly to her Wisconsin healthcare employer.

2. After a dispute concerning a public review of Trainer's fishing-charter business, Trainer threatened Plaintiff that her workplace would be "blasted," located contact information associated with her employer, referenced purported HIPAA violations, and then placed or caused to be placed two telephone calls into Wisconsin accusing Plaintiff of medical-privacy and workplace misconduct.

3. Plaintiff is a nurse. She had never treated Trainer, accessed his medical information, discussed or disclosed his medical information, or encountered him at her

workplace. The workplace encounter and mocking incident described in the second voicemail did not occur. The accusations were false.

4. The calls were received by Plaintiff's executive director in Green Bay, Wisconsin. Plaintiff's employer thereafter confronted Plaintiff regarding the accusations and required HIPAA re-education, causing professional scrutiny, reputational injury, emotional distress, and other harm.

5. Plaintiff seeks compensatory and punitive damages for defamation and intentional interference with her employment relationship.

## PARTIES

6. Plaintiff Kortney Oviedo is a natural person domiciled in Wisconsin and a citizen of the State of Wisconsin at the time this action is filed. At all relevant times, Plaintiff worked as a nurse for Green Bay Health Services in Green Bay, Brown County, Wisconsin. Plaintiff is a private individual, and the employer-directed communications at issue concerned her private employment and professional conduct.

7. Defendant Benjamin E. Trainer is a natural person domiciled in Tavernier, Monroe County, Florida, and is a citizen of the State of Florida.

8. Trainer publicly identifies himself as the owner and operator of Leatherneck Backcountry Fishing and Veterans R&R Fishing and, at all relevant times, exercised control over the businesses' operations, social-media presence, and telephone number 305-570-9424.

9. Defendant Leatherneck Backcountry Fishing LLC is a Florida limited liability company formed under Florida law. Florida public records identify Trainer as manager and registered agent at 148 Marine Avenue, Apartment B, Tavernier, Florida, and Suzanne M. Lewis as an authorized member at 148 Marine Avenue, Apartment A, Tavernier, Florida. The last

annual report identified in the supplied record was filed in 2018. Leatherneck was administratively dissolved in 2019, but in 2026 Trainer continued to use the Leatherneck name, website, social-media presence, and business telephone number to promote and solicit fishing-charter business.

10. Leatherneck's last-filed Florida annual report identifies Suzanne M. Lewis as an authorized member of Leatherneck, and no subsequent Florida filing reflects a change in that membership. Lewis is a natural person domiciled in Tavernier, Florida and is a citizen of the State of Florida. Current Florida voter-registration records identify Lewis as an active Florida voter residing in Tavernier, Florida and reflect that she has been registered to vote in Florida since 2014. Leatherneck's public filings identify no entity member whose citizenship must be traced through additional ownership layers.

11. For purposes of 28 U.S.C. § 1332, Leatherneck is a citizen of every State of which any of its members is a citizen, rather than a citizen merely of its State of formation or the location of its principal office.

12. Defendant Veterans R&R Fishing Incorporated is a Florida not-for-profit corporation incorporated under Florida law. Florida public records list Trainer under the officer/director title "Owner" and list 144 Sioux Street, Tavernier, Florida 33070 as its principal address. Veterans R&R was administratively dissolved in 2023, but Trainer continued thereafter to promote and use the Veterans R&R name in connection with the same fishing operations and public-facing social-media presence.

13. Veterans R&R is incorporated in Florida and, at the time this action is filed, its direction, control, and principal place of business are in Tavernier, Florida. It is therefore a citizen of Florida for purposes of 28 U.S.C. § 1332(c)(1).

## SUBJECT-MATTER JURISDICTION

14. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the action is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15. Plaintiff is a citizen of Wisconsin. Trainer, Leatherneck, and Veterans R&R are citizens of Florida. Complete diversity therefore exists.

16. The amount in controversy exceeds $75,000, exclusive of interest and costs, based on Plaintiff's good-faith claims for injury to her professional reputation, humiliation, anxiety, sleep disruption, and emotional distress; presumed or general damages to the extent allowed by law; and punitive damages to the extent allowed by law. Plaintiff does not seek duplicate recovery for the same injury under different counts or theories of liability.

## PERSONAL JURISDICTION AND VENUE

17. This Court may exercise personal jurisdiction over Defendants under Fed. R. Civ. P. 4(k)(1)(A) and Wisconsin's long-arm statute, including Wis. Stat. § 801.05(3), because Defendants purposefully directed tortious communications into Wisconsin and the claims arise directly from those Wisconsin-directed acts.

18. Trainer knew that Plaintiff worked for a healthcare employer in Wisconsin, located or obtained contact information associated with that employer, expressly threatened Plaintiff that her workplace would be "blasted," and thereafter placed or caused to be placed the allegedly defamatory calls into Wisconsin.

19. The telephone calls at issue were not merely conduct occurring elsewhere that happened to have consequences in Wisconsin. The calls themselves were the alleged tortious publications, and they were deliberately made to Plaintiff's employer in Green Bay, Wisconsin.

20. The exercise of jurisdiction over Leatherneck is based on the Wisconsin-directed conduct of Trainer as its alleged manager and operating agent. The exercise of jurisdiction over Veterans R&R is based on that same conduct by Trainer as its alleged controlling operating agent. For each entity, Plaintiff relies on the dispute arising from the charter operations, Trainer's use of the jointly branded business page, and his alleged use of the advertised business telephone number to make or cause the Wisconsin employer calls while acting at least in part to protect or defend that entity's business interests. Plaintiff does not rely solely on common branding or Trainer's control as a substitute for an entity's own actionable contacts through its agents.

21. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including publication of the challenged statements to Plaintiff's employer and resulting employment-related consequences in Brown County, Wisconsin.

22. The Green Bay Division has the greatest nexus to this action because Green Bay Health Services, the recipient of the challenged communications, and material nonparty witnesses are located in Brown County.

**AGENCY AND BUSINESS-ENTITY ALLEGATIONS**

23. At all relevant times, Trainer was the manager, operator, controlling agent, and public face of the operations conducted under the Leatherneck name and the controlling operating agent and public face of the operations conducted under the Veterans R&R name. Plaintiff alleges these agency relationships upon information and belief, based on the public records, Trainer's statements, and the business communications described below.

24. The public-facing Facebook page was jointly branded "Leatherneck Backcountry Fishing/Veterans R&R Fishing" and publicly listed 305-570-9424 as its contact number.

25. Trainer's personal social-media profile likewise identified him as the owner of "Leatherneck Backcountry Fishing/Veterans R&R Fishing."

26. The dispute arose from Plaintiff's review of Trainer's charter business, and Trainer repeatedly referenced perceived harm to his business during his communications with Plaintiff.

27. Trainer used the business social-media page to publish content concerning Plaintiff and used the same number publicly held out as the businesses' number in connection with the employer contacts at issue.

28. Trainer acted individually and, alternatively, at least in part to serve, protect, promote, or defend the interests of Leatherneck and Veterans R&R. Upon information and belief, Trainer used the business page and advertised business telephone number as the operating agent of each business Defendant to retaliate over Plaintiff's review of the charter operation. Plaintiff alleges that each business Defendant participated through Trainer's managerial conduct and, alternatively, authorized or ratified the conduct through him. The details of those agency, authorization, and ratification relationships are alleged on information and belief and are expected to have evidentiary support after a reasonable opportunity for discovery of Defendants' business and communication records.

29. Plaintiff pleads individual, direct, agency, and vicarious liability in the alternative to the extent permitted by Fed. R. Civ. P. 8(d)(2)-(3).

## FACTUAL ALLEGATIONS

30. On or about February 2, 2026, Plaintiff posted in a public Facebook group seeking recommendations for a Florida Keys boat charter.

31. Trainer responded to the post in a manner Plaintiff considered rude and disparaging. After learning that Trainer operated a charter business, Plaintiff posted a short review on the business page stating: "Very rude, would never book."

32. For approximately the next three weeks, Plaintiff and Trainer had no direct communications.

33. On or about February 27, 2026, Trainer initiated direct contact with Plaintiff through Facebook Messenger.

34. Among other things, Trainer told Plaintiff to "Get out of our country" and stated, "Found your address calling ice."

35. During the ensuing exchange, Trainer acknowledged that he had confused Plaintiff with another person and repeatedly represented that he had contacted the wrong person. His messages included admissions that he "literally sent it to the wrong person," that he believed he had been arguing with a different woman, and apologies for the mistaken identity.

36. Trainer also acknowledged that his assumption about Plaintiff was based in part on her surname, writing: "Look at your last name I figured it was Russian."

37. Despite recognizing the mistaken identity, Trainer continued to focus on Plaintiff's employment and professional status.

38. On or about February 28, 2026, Trainer sent Plaintiff a message referencing purported "HIPAA violations" and included the telephone number 414-962-5250, a number associated with North Shore Healthcare.

39. Trainer thereby demonstrated that he had identified or researched Plaintiff's healthcare employer or its affiliated organization before the later calls at issue.

40. On or about March 1, 2026, Trainer sent Plaintiff the message: "Wait till your work gets blasted can't wait to hear from them."

41. On or about the same date, the combined Leatherneck Backcountry Fishing/Veterans R&R Fishing Facebook page published content concerning Plaintiff that displayed her name, profile, review, Messenger content, and images containing her minor children's faces.

42. The business-page publication further connected Trainer's personal dispute with Plaintiff to the business Defendants and demonstrated that Trainer was using business-controlled communication channels as part of the dispute.

43. Plaintiff repeatedly directed Trainer to stop contacting her. The parties' direct Facebook communications ended on or about March 1, 2026.

44. Green Bay Health Services is located at 1640 Shawano Avenue, Green Bay, Wisconsin 54303. Kristin Molski was its Executive Director and Plaintiff's supervisor at the relevant time.

45. On March 22, 2026, at approximately 3:42 p.m., Molski received a telephone call and voicemail from 305-570-9424 concerning Plaintiff.

46. On March 22, 2026, at approximately 4:16 p.m., Molski received a second telephone call and voicemail from the same number concerning Plaintiff.

47. The caller identification associated with the calls identified Ben Trainer, and 305-570-9424 is the same telephone number Trainer controlled and that was publicly advertised on the Leatherneck/Veterans R&R business page and website.

48. Upon information and belief, Trainer personally made the first March 22 call. The second voicemail was left by a female caller using the same 305-570-9424 number controlled by

Trainer and publicly advertised for the Leatherneck/Veterans R&R businesses. Plaintiff does not presently know the female caller's identity. Upon information and belief, the female caller was associated with Trainer and/or Leatherneck and acted at Trainer's direction, with his authorization, and/or in concert with him. That inference is supported by her use of the Trainer-controlled business number and by the call's consistency with Trainer's prior reference to purported HIPAA violations and his express threat that Plaintiff's work would be "blasted."

49. In the first March 22 voicemail, Trainer stated the following words: "Hey [unintelligible], I'd like to file a formal complaint regarding one of your workers, Kortney, of a HIPAA violation. She violated my privacy after I was talking to her about a personal issue with a hemorrhoid. So I'm very, very upset with how you guys conduct business."

50. In the second March 22 voicemail, the female caller stated the following words: "Hey, Kristen, this is, uh, young, this is, uh, a customer that I work with and I came in to see you guys, uh, about three months ago, and, um, I don't understand, but Kortney, she was making fun of me because I had an ass fissure, I had a fissure on my ass, and I don't understand why she would make, make, make fun of that."

51. The first voicemail specifically identified Plaintiff, accused her of a HIPAA violation, and asserted that she violated the caller's privacy after he discussed a personal issue involving a hemorrhoid with her.

52. The second voicemail specifically identified Plaintiff, and the female caller asserted that she had visited the facility approximately three months earlier and that Plaintiff made fun of her because she had an anal fissure.

53. Those statements conveyed to Plaintiff's healthcare employer that Plaintiff had violated a person's medical privacy and had mocked a person at the facility because of a private medical condition.

54. The statements were false. Plaintiff had never treated Trainer, accessed Trainer's medical information, discussed or disclosed Trainer's medical information, or discussed Trainer's hemorrhoid or other medical condition. The workplace encounter described in the second voicemail did not occur: Plaintiff did not mock any visitor or patient at Green Bay Health Services because of an anal fissure or any other medical condition as alleged by that caller.

55. Plaintiff did not engage in the conduct described in the second voicemail. The female caller's identity remains unknown to Plaintiff.

56. Trainer knew his accusation was false or, at minimum, acted in reckless disregard of its truth or falsity. Before the calls, Trainer had admitted that he confused Plaintiff with another woman and had contacted the wrong person. The female caller likewise knew whether she had personally encountered Plaintiff and whether Plaintiff had mocked her as alleged.

57. The timing and sequence of events further demonstrate retaliatory purpose: Trainer first referenced purported HIPAA violations and Plaintiff's employer-related contact information, then expressly threatened that Plaintiff's "work gets blasted," and later personally made the first workplace accusation and, upon information and belief, caused, authorized, or acted in concert with the female caller to make the second accusation from his business-controlled telephone number.

58. On March 23, 2026, Molski informed Plaintiff about the calls and discussed the allegations with her.

59. As a result of the workplace complaint, Plaintiff was subjected to professional scrutiny and was required by her employer to complete HIPAA re-education through Relias.

60. Plaintiff remained employed and did not lose wages, but the accusations placed her professional integrity and fitness as a nurse directly at issue before her executive director.

61. The employer-directed accusations and surrounding retaliatory conduct caused Plaintiff humiliation, anxiety, loss of peace of mind, reputational injury within her workplace, and emotional distress.

62. Plaintiff has experienced anxiety, sleep disruption, and related emotional-distress symptoms following the employer-directed accusations and surrounding retaliatory conduct.

63. The challenged employer communications were not made as part of a good-faith attempt to report an actual patient-care or privacy event. Trainer had no genuine patient or workplace encounter with Plaintiff to report, and the female caller had no workplace encounter in which Plaintiff mocked her or discussed her medical condition.

64. To the extent Defendants contend that the employer communications were conditionally privileged, any such privilege was abused and forfeited because the publications were knowingly or recklessly false and were made for the improper retaliatory purpose of harming Plaintiff in her employment.

## COUNT I - DEFAMATION (SLANDER, INCLUDING SLANDER PER SE)
## Against All Defendants

65. Plaintiff incorporates paragraphs 1 through 64 into this count.

66. Trainer made the first false statement of fact concerning Plaintiff to Molski, a third party. Upon information and belief, Trainer caused, authorized, and/or acted in concert with the female caller in making the second false statement to Molski through the same business-controlled telephone number.

67. The particular words complained of are set forth above in the quoted March 22 voicemail statements.

68. The statements were of and concerning Plaintiff because both callers specifically identified "Kortney" and directed the accusations to Plaintiff's executive director at her workplace.

69. The statements were false because Plaintiff never treated Trainer, possessed or disclosed his medical information, or discussed his hemorrhoid or other medical condition, and Plaintiff did not engage in the workplace encounter or mocking conduct described by the female caller.

70. The statements were defamatory because they tended to lower Plaintiff in the estimation of her employer and others, deter others from associating or dealing with her professionally, and subject her to professional scrutiny.

71. The accusation that a nurse violated medical privacy or improperly disclosed or discussed private medical information directly imputes conduct incompatible with the proper exercise of Plaintiff's nursing profession and is actionable as slander per se to the extent established by the particular words spoken.

72. Defendants acted at least negligently as to falsity and, in fact, acted with knowledge of falsity or reckless disregard for truth, as demonstrated by Trainer's prior mistaken-identity admissions, employer research, explicit workplace threat, and lack of any genuine medical or workplace encounter with Plaintiff, together with the female caller's necessary knowledge of whether the workplace encounter she described had actually occurred.

73. The employer-directed statements were not privileged. Alternatively, any conditional privilege was abused and lost because the statements were made with knowledge or

reckless disregard of falsity and for an improper retaliatory purpose rather than to advance any legitimate interest.

74. Trainer made the first statement individually and, upon information and belief, caused or authorized the female caller to make the second statement. Plaintiff alleges that, as described in paragraphs 23 through 29, Trainer acted as Leatherneck's manager and operating agent and as Veterans R&R's controlling operating agent, at least in part to defend their charter operations following Plaintiff's review. Each business Defendant is alleged to be directly liable for the conduct of its managing agent or, alternatively, vicariously liable for that conduct to the extent permitted by law.

75. As a direct and proximate result of the defamatory publications, Plaintiff suffered actual harm to her professional reputation, humiliation, anxiety, sleep disruption, and emotional distress, together with presumed and general damages to the extent allowed by law. Plaintiff does not allege lost wages or unidentified out-of-pocket expenses.

76. Defendants acted maliciously toward Plaintiff or in intentional disregard of Plaintiff's rights, supporting an award of punitive damages under Wis. Stat. § 895.043(3).

## COUNT II - INTENTIONAL INTERFERENCE WITH EMPLOYMENT RELATIONSHIP
### Against All Defendants

77. Plaintiff incorporates paragraphs 1 through 64 into this count. Plaintiff does not incorporate the legal allegations of Count I.

78. Plaintiff had an existing employment relationship with Green Bay Health Services. That relationship constituted a contractual relationship or, at minimum, a prospective contractual relationship protected under Wisconsin law.

79. Trainer knew of Plaintiff's employment relationship: he identified Plaintiff as a nurse, located information associated with her employer, referenced purported HIPAA violations and employer contact information, and expressly threatened that Plaintiff's workplace would be "blasted." Plaintiff attributes that knowledge to each business Defendant through the agency relationships alleged in paragraphs 23 through 29.

80. Trainer intentionally interfered with Plaintiff's employment relationship by making the first false employer complaint and, upon information and belief, causing or authorizing the female caller to make the second complaint. Plaintiff attributes those acts to Leatherneck and Veterans R&R through the agency relationships alleged in paragraphs 23 through 29.

81. Defendants' prime purpose was to interfere with Plaintiff's employment relationship or, alternatively, Defendants knew that interference with that relationship was certain or substantially certain to result from making serious professional-misconduct accusations to Plaintiff's executive director.

82. The interference produced actual workplace consequences, including supervisory scrutiny and required HIPAA re-education, and caused actual harm to Plaintiff's professional reputation and emotional well-being.

83. Defendants' conduct was not justified or privileged. The accusations were knowingly or recklessly false, followed an explicit threat directed at Plaintiff's employment, and were motivated by retaliation arising from the online dispute and business review.

84. The conduct was a substantial factor in causing the workplace consequences described in paragraphs 58 through 62 and Plaintiff's actual reputational injury, humiliation, and

emotional distress, to the extent those injuries support recovery under Wisconsin law. Plaintiff remained employed and does not allege lost wages or undocumented treatment costs.

85. Defendants acted maliciously toward Plaintiff or in intentional disregard of Plaintiff's rights, supporting an award of punitive damages under Wis. Stat. § 895.043(3).

**PUNITIVE DAMAGES ALLEGATIONS**

86. Plaintiff seeks punitive damages against Trainer and against each business Defendant to the extent permitted by law. Any punitive award must be assessed separately against the liable Defendant; punitive damages are not sought jointly and severally. Plaintiff seeks such damages subject to Wis. Stat. § 895.043(3), (5), and (6) and applicable constitutional limitations.

87. The preceding allegations support an inference that Trainer deliberately targeted Plaintiff's employment after acknowledging that his initial targeting of Plaintiff resulted from mistaken identity.

88. Trainer researched or obtained employer-related information, referenced purported HIPAA violations, expressly threatened Plaintiff that her work would be "blasted," and then made or caused professional-misconduct accusations to be delivered directly to her executive director.

89. The conduct was deliberate and retaliatory, and Defendants acted maliciously toward Plaintiff or in intentional disregard of Plaintiff's rights within the meaning of Wis. Stat. § 895.043(3).

90. Trainer allegedly acted as the controlling managerial and operating agent of each business Defendant and personally participated in the conduct. Upon information and belief,

each business Defendant authorized, participated in, approved, or ratified the conduct through Trainer as its managerial agent, to the extent required for punitive liability under applicable law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in her favor and against the liable Defendants, jointly and severally as to compensatory damages only to the extent permitted by law, and award:

A. Compensatory damages for proven professional reputational injury, humiliation, anxiety, sleep disruption, and emotional distress in an amount to be determined by the jury;

**B.** Presumed and general damages for slander per se to the extent permitted by Wisconsin law;

C. Other damages established at trial and recoverable under applicable law, without duplicate recovery for the same injury;

D. Punitive damages assessed separately against each liable Defendant under Wis. Stat. § 895.043, subject to its limitations and applicable constitutional requirements;

**E.** Taxable costs under applicable law;

**F.** Prejudgment and post-judgment interest to the extent allowed by law; and

**G.** Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b)-(c).

Dated: October 5, 2026

Respectfully submitted,

s/ Michele Mitchell

**Michele Mitchell**

Attorney Bar Number: 1048843 (Florida)

Attorney for Plaintiff Kortney Oviedo

**MTAM Law, PLLC**

P.O. Box 816645

Hollywood, Florida 33081-0645

Telephone: 954-658-0789

E-mail: michele@mtam.law